UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.T. (a minor, by and through his grandparent and guardian ad litem, JANICE WOLFE),<br><br>Plaintiff,<br><br>v.<br><br>TEHACHAPI UNIFIED SCHOOL DISTRICT,<br><br>Defendant. | No. 1:16-cv-01492-DAD-JLT<br><br>ORDER GRANTING PETITION FOR APPROVAL OF MINOR'S COMPROMISE<br><br>(Doc. No. 79) |

On January 31, 2019, plaintiff J.T., by and through his guardian ad litem Janice Wolfe, filed a petition for approval of a compromise of his claims against defendant. (Doc. No. 79.) No opposition was filed by defendant Tehachapi Unified School District ("TUSD"). Having reviewed plaintiff's submission, the court deems the petition suitable for decision without oral argument pursuant to Local Rule 230(g), and the hearing previously set for March 5, 2019 is hereby vacated. For the reasons that follow, the court will grant the petition.

## BACKGROUND

The factual background of this case has been addressed extensively in a prior court order (*see* Doc. No. 50), and is recited here only as relevant to the petition now pending before the court. J.T. is an eight-year-old boy of average to low-average cognition, with attention deficit hyperactivity disorder, autism, receptive and expressive speech delay, possible history of trauma,

1

and possible psychosis, among other conditions. (Doc. No. 79 at 4.) J.T.'s legal guardians are his grandparents. (*Id.*) In May 2014, J.T.'s grandparents withdrew J.T. from school after he came home with unexplained bruising, which his grandparents believed to be the result of physical abuse by J.T.'s teacher. (*Id.*) Due to an impasse between J.T.'s grandparents and TUSD regarding appropriate placement of J.T., J.T. remained out of school for approximately three years. (*Id.* at 4–5.) In that time, J.T. was repeatedly psychiatrically hospitalized. (*Id.* at 5.)

Beginning in July 2017, and at the suggestion of TUSD, J.T. began attending the Aurora Learning Center in Bakersfield, a program of the Kern County Superintendent of Schools ("KCSOS"). (Doc. No. 43 at 30.) Plaintiff contends, however, that the program lacks behavioral or psychiatric support sufficient to meet J.T.'s needs. Staff at KCSOS have documented behaviors by J.T. including hitting, kicking, biting, and flipping desks and chairs, which have resulted in injuries to staff and have led staff to physically restrain J.T. (Doc. No. 79 at 6–7.) At times, J.T. has also refused to board the bus to the Aurora Learning Center, forcing his grandparents to drive him the 82 miles roundtrip to Bakersfield. (*Id.* at 6.)

In the interim, plaintiff filed a due process complaint before the Office of Administrative Hearings. On August 5, 2016, the administrative law judge ("ALJ") found that, pursuant to the Individuals with Disabilities Education Act ("IDEA"), TUSD had denied J.T. a free appropriate public education with respect to one issue, but that plaintiff failed to meet his burden of proof with respect to all other issues. (*Id.* at 5.) Plaintiff subsequently sought review of the ALJ's decision by this court on October 4, 2016, and brought additional claims pursuant to the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504"). (Doc. No. 1.) Among the issues raised by plaintiff in the appeal was whether the ALJ had erred in failing to direct that plaintiff be placed into a residential treatment facility, as had been recommended by plaintiff's experts. (*See* Doc. No. 50 at 12–15.)

The court bifurcated the IDEA claims from the ADA and Section 504 claims, and on January 29, 2018, issued an order affirming the ALJ's decision on appeal. (Doc. No. 50.) Plaintiff subsequently appealed that decision to the United States Court of Appeals for the Ninth Circuit. (Doc. No. 54.) On May 4, 2018, the Ninth Circuit dismissed the appeal in response to

appellant's motion for voluntary dismissal. (Doc. No. 67.)

On December 17, 2018, the parties notified the assigned magistrate judge that they had reached a global resolution of the case. (Doc. Nos. 77, 78.) On January 31, 2019, plaintiff filed the petition for approval of minor's compromise now pending before the court. (Doc. No. 79.) The petition attaches a settlement agreement signed by the parties which resolves all of plaintiff's claims against defendant. (Doc. No. 79-1.)

## LEGAL STANDARD

This court has a duty to protect the interests of minors participating in litigation before it. *Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983). To carry out this duty, the court must "conduct its own inquiry to determine whether the settlement serves the best interests of the minor." *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011) (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)); *see also Salmeron*, 724 F.2d at 1363 ("[A] court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian ad litem.") (citation omitted).

In examining the fairness of a settlement of a minor's federal claims, the Ninth Circuit has held that a district court's inquiry should focus solely on "whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." *Robidoux*, 638 F.3d at 1181–82; *see also id.* at 1179 n.2 (limiting the court's holding to cases involving federal claims only). Where a settlement involves state law claims, federal courts generally are guided by state law. *See* Tashima & Wagstaffe, California Practice Guide: Federal Civil Procedure Before Trial ¶ 15:138 (Cal. & 9th Cir. Eds. 2015) ("Federal courts generally require that claims by minors . . . be settled in accordance with applicable state law. California law requires court approval of the fairness and terms of the settlement."). A settlement for a minor and attorney's fees to represent a minor must be approved by the court. Cal. Prob. Code § 3601; Cal. Fam. Code § 6602. Reasonable expenses and court costs to be paid out of the settlement also must be approved by the court. Cal. Prob. Code § 3601. Finally, the Local Rules of this court require the parties to make disclosures

regarding the minors involved, the nature of the controversy, the manner in which the compromise was determined, and whether a conflict of interest may exist between the minor and her attorney. *See* Local Rules 202(b)–(c).

**DISCUSSION**

In petitions for a minor's compromise, courts typically consider such information as the relative worth of the settlement amount, the circumstances of the settlement, counsel's explanation of their views and experiences in litigating these types of actions, and other, similar compromises that have been approved by courts. *See, e.g.*, *Bravo v. United States*, No. 1:14-cv-01004-AWI-JLT, 2016 WL 3418450, at *2–3 (E.D. Cal. June 22, 2016) (considering the posture of the case and the fact that the settlement occurred at a court-supervised settlement conference); *Hagan v. Cal. Forensic Med. Grp.*, No. 2:07-cv-01095-LKK-AC, 2013 WL 461501, at *1 (E.D. Cal. Feb. 5, 2013) (considering court-approved minor's settlements in other cases).

Here, plaintiff's counsel represents that the settlement "has finally accomplished for J.T. what he has needed for the past four years"—residential treatment center placement and supervision by a Board Certified Behavior Analyst ("BCBA"). (Doc. No. 79 at 7.) According to plaintiff's counsel, the BCBA supervision will provide J.T. with Applied Behavior Analysis, a "scientifically proven methodology" that will "replace the use of physical restraints[] that have been used by Defendant thus far in addressing J.T.'s behaviors," and will teach J.T. "adaptive behaviors to replace his extreme and maladaptive behaviors." (*Id.*) In addition, the settlement provides for $10,000 to be paid to J.T.'s grandparents for the time and expense of transporting J.T. to and from the Aurora Learning Center in Bakersfield, and $50,000 to be placed in a blocked trust fund for J.T.'s future independent-living and educational expenses once he reaches the age of eighteen. (*Id.*)

The court has examined cases with similar factual allegations that have come before the Eastern District, and finds that the net recovery in this case is in line with or exceeds other net recoveries in this district. *See, e.g.*, *Warchol v. Kings Cty. Office of Educ.*, No. 1:17-cv-00106-DAD-MJS, 2018 WL 1185053 (E.D. Cal. Mar. 7, 2018) (approving settlement of $100,000, inclusive of attorneys' fees, where plaintiff diagnosed with autism alleged ongoing verbal and

4

physical abuse by teacher); *Brooks v. Fresno Unified Sch. Dist.,* No. 1:15-cv-00673-WBS-BAM, 2015 WL 9304862 (E.D. Cal. Dec. 22, 2015) (approving settlement of $500,000, inclusive of attorneys' fees, after a psychologist diagnosed the plaintiff as suffering from post-traumatic stress disorder as a result of the conduct alleged and estimated that two to five years of therapy was necessary to recover from psychological trauma); *D.C. ex rel. T.C. v. Oakdale Joint Unified Sch. Dist.,* No. 1:11-cv-01112-SAB, 2013 WL 275271 (E.D. Cal. Jan. 23, 2013) (approving net settlement payment of $65,000, inclusive of attorneys' fees, based on allegations that the school improperly used restraints and failed to provide proper programs, services, and activities); *T.B. v. Chico Unified Sch. Dist.*, No. 2:07-cv-00926-GEB-CMK, 2010 WL 1032669 (E.D. Cal. Mar. 19, 2010) (approving net settlement payment of $40,000, inclusive of attorneys' fees, based on allegations that the minor was subject to unnecessary force at school).

Here, the total value of the settlement is approximately $196,000 for this year, comprised of: $10,000 to be paid to J.T.'s grandparents for transportation costs incurred; $50,000 to be placed in a blocked trust fund for J.T.'s future independent-living and educational expenses; placement of J.T. in a residential treatment center, valued at approximately $100,000 per school year; and BCBA supervision of J.T. for three hours each week, valued at approximately $36,000 per school year. (Doc. No. 79-2 at ¶ 3.) Each subsequent year that J.T. attends the residential treatment center with BCBA supervision is valued at approximately $136,000. (*Id.* at ¶ 4.) Notably, the amount offered in settlement is exclusive of attorneys' fees, which, pursuant to the settlement agreement, will be arbitrated by retired United States Magistrate Judge David C. Bristow. (*Id.* at ¶ 5.)

Upon consideration of the information provided by the pending petition, the court is satisfied that this settlement is fair and reasonable in light of the facts of the case and the minor's specific claim.

/////
/////
/////
/////

5

**CONCLUSION**

For the reasons set forth above:

1. The hearing date previously set for March 5, 2019 is vacated;
2. Plaintiff's petition to approve minor's compromise (Doc. No. 79) is granted;
3. Pursuant to the parties' settlement agreement (Doc. No. 79-1):
    a. Defendant shall pay $10,000 for the benefit of J.T.'s grandparents to the client trust account of plaintiff's counsel within 30 days;
    b. Defendant shall pay $50,000 for the benefit of J.T. to the client trust account of plaintiff's counsel within 30 days, which shall be placed in a blocked trust account;
    c. Defendant shall place J.T. in a residential treatment center indefinitely until J.T.'s individualized education plan team determines it would be safe and appropriate for him to return to a day school setting;
    d. Defendant will fund 3 hours per week of on-site visitation and consultation by a Board Certified Behavior Analyst;
    e. Attorneys' fees shall be determined by arbitration; and
4. The parties are directed to file a request for dismissal of this action within seven (7) days of the date of this order.

IT IS SO ORDERED.

Dated: **February 26, 2019**

UNITED STATES DISTRICT JUDGE